Matthew T. Walsh, Esq. (Bar No. 208169)
**CARROLL, McNULTY & KULL LLC**
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Telephone: (312) 800-5000
Facsimile: (312) 800-5010
Email: mwalsh@cmk.com

Attorneys for Plaintiff COLUMBIA CASUALTY COMPANY

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>COTTAGE HEALTH SYSTEM<br><br>Defendant. | Case No.: 2:15-cv-03432<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT OF DEFENSE AND SETTLEMENT PAYMENTS** |

Plaintiff COLUMBIA CASUALTY COMPANY (hereinafter "Columbia") by and through its attorneys, as and for Complaint against Defendant, hereby allege as follows:

**INTRODUCTION**

1. This is a Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and for Reimbursement of Defense and Settlement Payments made by Columbia on behalf of its insured.

2. This matter arises out of a data breach that resulted in the release of electronic private healthcare patient information stored on network servers owned, maintained and/or utilized by defendant COTTAGE HEALTH SYSTEM ("Cottage").

3. Cottage operates a network of hospitals located in Southern California, including Santa Barbara Cottage Hospital, Goleta Valley Cottage Hospital and Santa Ynez Valley Cottage Hospital (collectively, the "Hospitals.")

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

4. Following the data breach, a class action lawsuit was commenced against Cottage in which the plaintiffs asserted claims against Cottage and others based on its alleged breach of California's Confidentiality of Medical Information Act ("CMIA"), California Civil Code §56, *et seq.* A settlement has been reached in the class action lawsuit for the amount of $4.125 million.

5. Columbia has agreed to fund the $4.125 million class action settlement, subject to a complete reservation of rights.

6. The data breach is also the subject of an ongoing investigation conducted by the California Department of Justice regarding Cottage's potential violations of the federal Health Insurance Portability and Accountability Act ("HIPAA.")

7. Columbia issued a liability policy to Cottage providing claims made coverage for the October 1, 2013 to October 1, 2014 policy period.

8. Columbia seeks a declaration that it is not obligated to provide Cottage with a defense or indemnification in connection with any and all claims stemming from the data breach at issue.

9. Columbia also seeks a declaration of its entitlement to reimbursement in full from Cottage for any and all attorney's fees or related costs or expenses Columbia has paid or will pay in connection with the defense and settlement of the class action lawsuit and any related proceedings and an award of damages consistent with such declaration.

## PARTIES, JURISDICTION AND VENUE

10. Columbia is a corporation organized and existing under the laws of the State of Illinois and having its principal place of business located at CNA Plaza, Chicago, Illinois. Columbia is in the business of providing and underwriting insurance. Columbia is, and at all

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

times relevant to this Complaint was, duly authorized to transact business in the State of California.

11.     Upon information and belief, Cottage is a California organization with its principal place of business located at 400 West Pueblo Street, Santa Barbara, California 93105.

12.     This litigation is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) based on diversity of the parties and the amount in controversy.

13.     The amount in controversy in this matter exceeds $75,000. Columbia seeks a declaration that it is not obligated to provide coverage to Cottage for any portion of a $4.125 million class action settlement, as well as additional potential regulatory liability.

14.     The insurance contract between Columbia and Cottage that is the subject of this declaratory judgment action was issued to Cottage in this District. Further, the alleged acts and omissions on the part of Cottage that precipitated the claims for which coverage is sought took place in this District. Therefore, venue is proper in this District pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

**A.     The Underlying Action**

15.     On or about January 27, 2014, a proposed class action was commenced in California Superior Court, Orange County styled Kenneth Rice, et al. v. INSYNC, Cottage Health System, et al., Case No. 30-2014-00701147-CU-NP-CJC (the "Underlying Action").

16.     The complaint alleges that between October 8, 2013 and December 2, 2013, confidential medical records of approximately 32,500 of Cottage's Hospitals' patients that were stored electronically on Cottage's servers were disclosed to the public via the internet.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

17. The complaint alleges that the breach occurred because Cottage and/or its third-party vendor, INSYNC Computer Solution, Inc. ("INSYNC"), stored medical records on a system that was fully accessible to the internet but failed to install encryption or take other security measures to protect patient information from becoming available to anyone who "surfed" the internet.

18. The complaint alleges that Cottage violated its nondelegable duties under CMIA and HIPAA to maintain the security of its patients' confidential medical records and to detect and prevent data breaches on its system that would allow such information to become available to the public through the internet.

19. On or about December 24, 2014, the Court in the Underlying Action granted the class representative's motion for Preliminary Approval of Proposed Class Action Settlement. The proposed settlement involves creation of a $4.125 million settlement fund for payments to approximately 50,917 Settlement class members, along with related expenses and attorneys' fees.

20. Upon information and belief, INSYNC does not maintain sufficient liquid assets to contribute towards the proposed settlement fund and does not maintain liability insurance that applies with respect to the privacy claims asserted in the Underlying Action.

21. Columbia has agreed to fund the $4.125 million settlement of the Underlying Action on behalf of Cottage, subject to a complete reservation of rights, including the right to seek reimbursement of any funds paid or advanced on Cottage's behalf pending a resolution of the instant coverage dispute.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

**B.    The California Department of Justice Investigation**

22.    The data breach alleged in the Underlying Action is also the subject of a pending investigation by the California Department of Justice ("DOJ") (the "DOJ Proceeding"). The DOJ Proceeding will determine whether Cottage complied with its obligations under HIPAA and any other pertinent state and federal laws and may potentially result in the imposition of fines, sanctions or penalties.

**C.    The Columbia Policy**

23.    Columbia issued a "NetProtect360" claims-made liability policy to Cottage in effect from October 1, 2013 through October 1, 2014, under policy number 425565140-02 (the "Columbia Policy").

24.    As relevant here, the Columbia Policy provides coverage for Privacy Injury Claims and Privacy Regulation Proceedings with limits of $10,000,000 each claim or proceeding and $10,000,000 in the aggregate for all Claims – subject to a $100,000 deductible (the "Columbia Policy.") Coverage for Privacy Injury Claims is subject to a "Prior Acts" date of May 27, 2012.

25.    The Columbia Policy contains the following relevant Insuring Agreement provisions:

> A.  Insuring Agreements
>
> If the insuring Agreement has been purchased, as indicated in the Declarations, the Insurer will pay on behalf of the Insured all sums in excess of the Deductible and up to the applicable limit of insurance that the Insured shall become legally obligated to pay:
>
> *      *      *
>
> 2.  Privacy Injury Liability
>
>> A.  Privacy Injury Claim

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

>as Damages resulting from any Privacy Injury Claim both first made against the Insured and reported to the Insurer in writing during the Policy Period, or any Extended Reporting Period, if applicable, alleging any Wrongful Act by the insured, or by someone for whose Wrongful Act the Insured is legally responsible;
>
>B.  Privacy Regulation Proceeding
>
>as Damages and Claim Expenses resulting from any Privacy Regulation Proceeding both first made against the Insured and reported to the Insurer in writing during the Policy Period, or any Extended Reporting Period, if applicable, alleging any Wrongful Act by the Insured or by someone for whose Wrongful Act the Insured is legally responsible;…

26. The Columbia Policy contains the following relevant exclusion:

>Whether in connection with any First Party Coverage or any Liability Coverage, the Insurer shall not be liable to pay any Loss:
>
>\*       \*       \*
>
>O.  Failure to Follow Minimum Required Practices
>
>based upon, directly or indirectly arising out of, or in any way involving:
>
>1.  Any failure of an Insured to continuously implement the procedures and risk controls identified in the Insured's application for this Insurance and all related information submitted to the Insurer in conjunction with such application whether orally or in writing;…

27. The Columbia Policy contains the following relevant conditions:

>I.  Application
>
>1.  The Insureds represent and acknowledge that the statements contained on the Declarations and in the Application, and any materials submitted or required to be submitted therewith (all of which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are the Insured's representations, are true and: (i) are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy; and  (ii) shall be

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

        deemed material to the acceptance of this risk or the hazard assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations.

    2. This Policy shall be null and void if the Application contains any misrepresentation or omission:

        a. made with the intent to deceive, or

        b. which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy.

        *   *   *

Q. Minimum Required Practices

The Insured warrants, as a condition precedent to coverage under this Policy, that is shall:

1. follow the Minimum Required Practices that are listed in the Minimum Required Practices endorsement as a condition of coverage under this policy, and

2. maintain all risk controls identified in the Insured's Application and any supplemental information provided by the Insured in conjunction with Insured's Application for this Policy.

28. The Columbia Policy contains the following relevant definitions:

Application means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer or any affiliate of the Insurer of which this Policy is a renewal or replacement. Application includes any materials submitted or required to be submitted therewith. An affiliate of the Insurer means an entity controlling, controlled by or under common control with the Insurer.

        *   *   *

Damages means civil awards, settlements and judgments... which the Insureds are legally obligated to pay as a result of a covered Claim. Damages shall not include:

        *   *   *

B. criminal, civil, administrative or regulatory relief, fines or penalties;

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

                     \*     \*     \*

    D.  injunctive or declaratory relief;
    E.  matters which are uninsurable as a matter of law; or

                     \*     \*     \*

Notwithstanding the foregoing paragraph, Damages shall include... punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages.

                     \*     \*     \*

Privacy Regulation Proceeding means a civil, administrative or regulatory proceeding against an Insured by a federal, state or foreign governmental authority alleging violation of any law referenced under the definition of Privacy Injury or a violation of a Security Breach Notice Law.

**D.**      **The Columbia Policy Application**

29.    As part of the application submitted in connection with the Columbia Policy, Cottage completed and submitted a "Risk Control Self Assessment" in which it made the following relevant representations:

    4.  Do you check for security patches to your systems at least weekly and implement them within 30 days?    ● Yes

    5.  Do you replace factory default settings to ensure your information security systems are securely configured?    ● Yes

    6.  Do you re-assess your exposure to information security and privacy threats at least yearly, and enhance your risk controls in response to changes?    ● Yes

    11. Do you outsource your information security management to a qualified firm specializing in security or have staff responsible for and trained in information security?    ● Yes

    12. Whenever you entrust sensitive information to 3rd parities do you...

        a.  contractually require all such 3rd parties to protect this information with safeguards at least as good as your own    ● Yes

        b.  perform due diligence on each such 3rd party to ensure that their safeguards for protecting sensitive information meet your

standards (e.g. conduct security/privacy audits or review findings of independent security/privacy auditors) ● Yes

c. Audit all such 3rd parities at least once per year to ensure that they continuously satisfy your standards for safeguarding sensitive information? ● Yes

d. Require them to either have sufficient liquid assets or maintain enough insurance to cover their liability arising from a breach of privacy or confidentiality. ● Yes

13. Do you have a way to detect unauthorized access or attempts to access sensitive information? ● Yes

23. Do you control and track all changes to your network to ensure it remains secure? ● Yes

30. Upon information and belief, Cottage provided false responses to the foregoing questions when applying for coverage from Columbia.

31. Cottage's application for the Columbia Policy contains the following "Warranty:"

> Applicant hereby declares after inquiry, that the information contained herein and in any supplemental applications or forms required hereby, are true, accurate and complete, and that no material facts have been suppressed or misstated. Applicant acknowledges a continuing obligation to report to the CNA Company to whom this Application is made ("the Company") as soon as practicable any material changes…all such information, after signing the application and prior to issuance of this policy, and acknowledges that the Company shall have the right to withdraw or modify any outstanding quotations and/or authorization or agreement to bind the insurance based upon such changes.
>
> Further, Applicant understands and acknowledges that:
>
> \*   \*   \*
>
> 2) If a policy is issued, the Company will have relied upon, as representations, this application, any supplemental applications and any other statements furnished to this Company in conjunction with this application.
>
> 3) All supplemental applications, statements and other materials furnished to the Company in conjunction with this application are hereby incorporated by reference into this application and made a part thereof.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

> 4) This application will be the basis of the contract and will be incorporated by referenced into and made a part of such policy.

### E.     Claim Investigation

32.     Columbia was originally notified of the data breach issue on December 3, 2013. By letter dated January 29, 2014, Columbia acknowledged receipt of the claim and reserved rights under the Columbia Policy. Specifically, Columbia explained that the liability coverage provided under the Columbia Policy had not been triggered because Cottage had not yet received a demand for monetary damages or notice of a potential regulatory fine associated with the data breach and advised Cottage to provide immediate notice upon receipt of any such claim.

33.     Columbia was then notified of the Underlying Action on January 29, 2014. By letter dated February 20, 2014, Columbia supplemented its reservation of rights to include the claims asserted in the Underlying Action. Based on the allegations in the complaint in the Underlying Action, Columbia reserved the right to disclaim coverage pursuant to the Columbia Policy's "Failure to Follow Minimum Required Practices" exclusion, among other grounds.

34.     Columbia thereafter issued further supplemental reservation of rights letters on July 9, 2014 addressing Cottage's deductible and coinsurance obligations and September 17, 2014 addressing additional and/or alternative coverage defenses that became apparent as its claim investigation proceeded.

35.     Prior to funding the $4.125 million settlement of the Underlying Action, Columbia advised Cottage that its agreement to fund the settlement was made subject to a full and complete reservation of rights under the Columbia Policy and applicable law to disclaim coverage and seek reimbursement in full from Cottage for any and all amounts paid towards settlement of the Underlying Action, along with any and all attorney's fees or related costs or

expenses Columbia has paid or will pay in connection with the same, pending a resolution of the instant coverage dispute.

36. A dispute has arisen as to the existence and scope of any obligation on the part of Columbia to Cottage under the Columbia Policy in connection with the claims at issue in the Underlying Action and the DOJ Proceeding.

37. Columbia seeks declaration that it has no duty to defend or indemnify Cottage in the Underlying Action or the DOJ Proceeding

38. Therefore, an actual and justiciable controversy exists regarding the nature and scope of the insurance coverage potentially owed to Cottage.

## **FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

39. Columbia repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

40. The Columbia Policy contains an exclusion entitled "Failure to Follow Minimum Required Practices" that precludes coverage for any loss based upon, directly or indirectly arising out of, or in any way involving "[a]ny failure of an Insured to continuously implement the procedures and risk controls identified in the Insured's application for this Insurance and all related information submitted to the Insurer in conjunction with such application whether orally or in writing."

41. Upon information and belief, the data breach at issue in the Underlying Action and the DOJ Proceeding was caused as a result of File Transfer Protocol settings on Cottage's internet servers that permitted anonymous user access, thereby allowing electronic personal health information to become available to the public via Google's internet search engine.

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

42. Upon information and belief, the data breach at issue in the Underlying Action and the DOJ Proceeding was caused by Cottage's failure to continuously implement the procedures and risk controls identified in its application, including, but not limited to, its failure to replace factory default settings its failure to ensure that its information security systems were securely configured, among other things.

43. Upon information and belief, the data breach at issue in the Underlying Action and the DOJ Proceeding was caused by Cottage's failure to regularly check and maintain security patches on its systems, its failure to regularly re-assess its information security exposure and enhance risk controls, its failure to have a system in place to detect unauthorized access or attempts to access sensitive information stored on its servers and its failure to control and track all changes to its network to ensure it remains secure, among other things.

44. Accordingly, Columbia is entitled to a declaration that it is not obligated to defend or indemnify Cottage in connection with the Underlying Action or the DOJ Proceeding and that coverage for the claims and potential damages at issue in the Underlying Action and the DOJ Proceeding is precluded pursuant to the Columbia Policy's Failure to Follow Minimum Required Practices" exclusion.

## SECOND CAUSE OF ACTION

**(Declaratory Relief)**

45. Columbia repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

46. The Columbia Policy's insuring agreement for a Privacy Regulation Proceeding applies with respect to Cottage's liability for "Damages and Claim Expenses resulting from any Privacy Regulation Proceeding."

COMPLAINT FOR DECLARATORY JUDGMENT AND REIMBURSEMENT

47. The term "Damages" is defined under the Columbia Policy to mean "civil awards, settlements and judgments... which the Insureds are legally obligated to pay as a result of a covered Claim," but does not include "criminal, civil, administrative or regulatory relief, fines or penalties."

48. The DOJ Proceeding will determine whether Cottage complied with its obligations under HIPAA and any other pertinent state and federal laws and may result in the imposition of civil, administrative or regulatory relief, fines or penalties against Cottage.

49. Accordingly, Columbia is entitled to a declaration that it is not obligated to defend or indemnify Cottage in connection with the DOJ Proceeding as any sanctions imposed or other relief awarded or in the DOJ Proceeding would not involve covered Damages under the Columbia Policy.

## THIRD CAUSE OF ACTION

### (Declaratory Relief)

50. Columbia repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

51. The Columbia Policy's "Application" condition provides that the Columbia Policy "shall be null and void if the Application contains any misrepresentation or omission: a. made with the intent to deceive, or b. which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy."

52. The Columbia Policy's "Minimum Required Practices" condition provides that, as a "condition precedent to coverage," Cottage warrants that it shall "maintain all risk controls identified in the Insured's Application and any supplemental information provided by the Insured in conjunction with Insured's Application for this Policy."

53. Upon information and belief, Cottage's application for coverage under the Columbia Policy contained misrepresentations and/or omissions of material fact that were made negligently or with intent to deceive concerning Cottage's data breach risk controls.

54. Upon information and belief, the data breach at issue in the Underlying Action and the DOJ Proceeding was caused by Cottage's failure to maintain the risk controls identified in its application, including, but not limited to, its failure to replace factory default settings to ensure that its information security systems were securely configured.

55. Accordingly, Columbia is entitled to a declaration that it is not obligated to defend or indemnify Cottage in connection with the Underlying Action or the DOJ Proceeding based on Cottage's breaches of the Columbia Policy's "Application" and "Minimum Required Practices" conditions.

## FOURTH CAUSE OF ACTION

**(Reimbursement of Defense and Settlement Payments)**

56. Columbia repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if set forth herein, verbatim and fully at length.

57. Columbia agreed to participate in Cottage's defense in the Underlying Action and to fund the $4.125 million settlement of the Underlying Action subject to a complete reservation of rights, including the right to seek reimbursement of any funds paid or advanced on Cottage's behalf pending a resolution of the instant coverage dispute.

58. To the extent that the Columbia Policy does not provide coverage for the claims asserted in the Underlying Action, Columbia is entitled to reimbursement from Cottage for the full amount of the $4.125 million Columbia paid in settlement of the Underlying Action, along with any and all defense costs, attorney's fees or related costs or expenses incurred by

Columbia on Cottage's behalf, pursuant to <u>Blue Ridge Ins. Co. v. Jacobsen</u>, 25 Cal 4th 489 (2001).

**WHEREFORE**, Plaintiff, Columbia Casualty Company, prays for the following relief:

(a) For a declaration that Columbia is not obligated to provide Cottage with coverage for any damages awarded, sanctions imposed or any other relief directed in the Underlying Action and the DOJ Proceeding;

(b) For a declaration that Columbia is not obligated to provide Cottage with coverage for any defense costs or claim expenses incurred in connection with the Underlying Action and the DOJ Proceeding;

(c) For a declaration that Cottage is obligated to reimburse Columbia for any and all sums Columbia paid on Cottage's behalf in connection with the Underlying Action, along with any and all defense costs, attorney's fees or related costs or expenses incurred by Columbia on Cottage's behalf, including, but not limited to, the $4.125 million settlement;

(d) For an award of Columbia's attorneys' fees and costs pursuant to law; and

(e) For such other relief as is just and equitable herein.

Dated: May 7, 2015

                                          CARROLL, McNULTY & KULL LLC

BY:   /s/ Matthew T. Walsh
       Matthew T. Walsh, Esq.
       Attorneys for Plaintiff
       100 North Riverside Plaza, Suite 2100
       Chicago, Illinois 60606
       (312) 800-5000 (tel.)
       (312) 800-5010 (fax)
       mwalsh@cmk.com